**Joseph R. DiLEO, Mary A. DiLeo, Walter E. Mycek, Jr., Michele A. Mycek and Arcelo Reproduction Company, Inc., Petitioners–Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent– Appellee.**

**No. 849, Docket 91–4178.**

United States Court of Appeals, Second Circuit.

Argued Feb. 12, 1992.

Decided March 20, 1992.

Jared J. Scharf, White Plains, N.Y. (Hall, Dickler, Lawler, Kent & Friedman, Morton A. Smith, of counsel), for petitioners-appellants.

Joy L. Pritts, Atty., Tax Div., Dept. of Justice, Washington, D.C. (Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, Charles E. Brookhart, Attys., Tax Div., Dept. of Justice, of counsel), for respondent-appellee.

Before: FEINBERG, TIMBERS and MINER, Circuit Judges.

FEINBERG, Circuit Judge:

Joseph R. DiLeo, Mary A. DiLeo, Walter E. Mycek, Jr., Michele A. Mycek and Arcelo Reproduction Company, Inc. (the taxpayers) appeal from judgments of the United States Tax Court, Arthur L. Nims, C.J., dated September 5, 1991, determining that they were liable for deficiencies in their federal income taxes. This appeal also raises issues preserved for appeal following a proceeding in the United States District Court for the Southern District of New York, Vincent L. Broderick, J., involving the same parties. The principal issue before us is whether certain documents, which had previously been the subject of a grand jury subpoena, were properly admitted into evidence against the taxpayers in the Tax Court. The taxpayers claim that the evidence should have been suppressed under Rule 6(e) of the Federal Rules of Criminal Procedure and that absent that evidence, most of their alleged tax deficiencies would have been barred by the statute of limitations. For the reasons given below, we affirm.

## I. Background

In March 1986, the Commissioner of Internal Revenue issued statutory notices of deficiency to the DiLeos and the Myceks for the tax years 1978 through 1981 and 1978 through 1982, respectively. In March 1987, the Commissioner issued a statutory notice of deficiency for the tax years 1978 through 1982 to Arcelo, a company in which Joseph DiLeo and Walter Mycek, Jr., were sole shareholders and corporate officers. In June 1986, the DiLeos and the Myceks filed petitions in the Tax Court for redeterminations of these deficiencies and in June 1987, Arcelo also sought such redetermination. The Tax Court subsequently consolidated the three cases for trial commencing in January 1988.

In early December 1987, the Commissioner served trial subpoenas duces tecum upon three banks—Chase Manhattan, Citibank and State National Bank of Connecticut, now Connecticut Bank and Trust Co. (CBT)—seeking production of "all books, records or other documents pertaining to [Arcelo's account] during the years 1977 through 1983." These records had originally been provided to a grand jury in the Southern District during a criminal investigation of the taxpayers that resulted in the indictments of Joseph R. DiLeo and Walter E. Mycek, Jr. for various tax and tax-related criminal violations. Philip B. Kirschen was the special agent of the Criminal Investigation Division (CID) of the Internal Revenue Service (IRS) assigned to assist the United States Attorney's office and the grand jury. Pursuant to plea agreements, Mycek and DiLeo pled guilty in May 1984 and March 1985, respectively, to various

counts in the indictments and each received a sentence of one year and a day in prison.

After the Mycek and DiLeo criminal cases were closed in 1985, the records obtained from the banks were not returned to them. Instead, Agent Kirschen took all of the records that had accumulated during the grand jury's investigation to his CID office in Newburgh, New York, sealed them in boxes and labelled the boxes. The boxes were then transported to the IRS facility management area located in the basement of a federal building in Albany, New York. The boxes were kept inside a cage, the key to which was maintained by the CID in Albany. These boxes included the records subsequently sought by the December 1987 trial subpoenas. In response to these subpoenas, each bank separately authorized the Commissioner to obtain the records requested. Agent Kirschen obtained these records from the CID storage cage in which the grand jury documents were stored. All remaining records not requested were returned to the boxes, which were then resealed.

The consolidated Tax Court cases proceeded to trial early in 1988. The taxpayers moved to suppress the bank records on the principal ground that they were obtained in violation of Fed.R.Crim.P. 6(e), which deals with disclosure of "matters occurring before the grand jury," and that disclosure of the documents at trial would violate the law. In September 1989, after holding an evidentiary hearing and receiving briefs on the issue, the Tax Court denied the taxpayers' motion, holding that the bank records at issue were not "matters occurring before the grand jury" and were therefore not encompassed by Rule 6(e). The Tax Court also ruled that the IRS was not estopped from making this argument after withholding under Rule 6(e) other documents that had been requested by the taxpayers.

In November 1989, after this ruling of the Tax Court, Mycek and DiLeo commenced a proceeding in the Southern District to enjoin the Commissioner from using the bank records in the Tax Court trial. In September 1990, Judge Broderick issued an order (followed by an opinion in January 1991) authorizing the use of the documents in the Tax Court because the documents did not constitute "matters occurring before the grand jury," under *United States v. Interstate Dress Carriers, Inc.*, 280 F.2d 52 (2d Cir.1960). However, Judge Broderick sharply criticized the manner in which the government handled the records after the Mycek and DiLeo criminal cases had ended. The judge also held that the Tax Court did not have the power to authorize disclosure of the grand jury material.

In November 1990, the taxpayers appealed from Judge Broderick's order to this court. In January 1991, the appeal was dismissed under a stipulation allowing the taxpayers to preserve their right to raise any issues they might have presented in that appeal on a subsequent appeal from a decision in the Tax Court case. Thereafter, the Tax Court issued an opinion in June 1991, upholding the deficiencies found by the Commissioner.

Agent Kirschen, the agent involved in the grand jury proceedings described above, was present at the Tax Court trial. During the trial, the Tax Court denied the taxpayers' request that Kirschen be excluded from the courtroom. In its June 1991 opinion, the Tax Court reaffirmed that ruling. In September 1991, the judgments were entered from which these appeals were taken.

## II. Discussion

*Matters occurring before the grand jury*

Rule 6(e) of the Federal Rules of Criminal Procedure prohibits, with certain specified exceptions, the disclosure of "matters occurring before the grand jury."[1] A

---

**1.** The rule provides in pertinent part:
 (e) Recording and Disclosure of Proceedings. * * * *
 (2) General Rule of Secrecy. A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who tran-

scribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph 3(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obli-

knowing disclosure, except as otherwise provided in the rules, may be punished as a contempt of court. This rule of nondisclosure serves to effectuate several important policies. The rule protects the safety of witnesses who testify before the grand jury. It thereby also helps to ensure that witnesses will be willing to come forward and that they will be able to testify fully and frankly, without fear of retribution. The secrecy also prevents suspects who might otherwise learn of investigations from fleeing their jurisdictions and from attempting to influence grand jurors prior to indictment. Finally, nondisclosure protects the reputations of suspects who are ultimately exonerated by the grand jury. *United States v. Sells Engineering, Inc.,* 463 U.S. 418, 424, 103 S.Ct. 3133, 3137, 77 L.Ed.2d 743 (1983).

The bank records at issue here were first obtained by a grand jury in the Southern District. They were turned over to the Commissioner several years later in response to the December 1987 trial subpoenas. The same records were ultimately used against the taxpayers at trial. Appellant taxpayers claim that this procedure improperly disclosed "matters occurring before the grand jury." The Commissioner disputes this view, relying heavily on our decision in *Interstate Dress*. The taxpayers claim, however, that *Interstate Dress* no longer represents the state of the law after the Supreme Court's decision in *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 110 S.Ct. 471, 107 L.Ed.2d 462 (1989). In *John Doe Agency*, the Supreme Court held that certain records were exempt from production under the Freedom of Information Act (FOIA), thereby reversing a decision of this circuit holding that the records were not exempt under that Act. In our decision, we had also rejected a claim that the information involved could not be dis-

closed under Rule 6(e), apparently applying the *Interstate Dress* standard, although we did not cite that case by name. See *John Doe Corp. v. John Doe Agency,* 850 F.2d 105, 109 (2d Cir.1988). The taxpayers argue that by reversing this circuit, the Supreme Court implicitly overruled the standard of *Interstate Dress*.

■ The taxpayers' argument is flawed. Although we did say in *John Doe Corp.* that Rule 6(e) permitted disclosure, 850 F.2d at 109, the Supreme Court did not address that issue but ruled only that the requested documents were exempt from disclosure under § 7 of the FOIA, 5 U.S.C. § 552(b)(7). The holding revolved around an analysis of the statutory language of the FOIA. See 493 U.S. at 153, 110 S.Ct. at 475. Having found that the documents could not be disclosed, the Court did not reach the Rule 6(e) issue and made absolutely no reference to Rule 6(e) in its entire opinion. *Interstate Dress* therefore remains the law in this circuit regarding the proper interpretation of Rule 6(e).

Under *Interstate Dress*, "when testimony or data is sought for its own sake—for its intrinsic value in the furtherance of a lawful investigation—rather than to learn what took place before the grand jury, it is not a valid defense to disclosure that the same information was revealed to a grand jury or that the same documents had been, or were presently being, examined by a grand jury." 280 F.2d at 54. Presumably, this rule rested upon the implicit assumption that in such instances disclosure would not "seriously compromise the secrecy of the grand jury's deliberations." *In re Special March 1981 Grand Jury,* 753 F.2d 575, 578 (7th Cir.1985). We have since cited *Interstate Dress* with approval, albeit in somewhat different contexts, see *S.R. Mercantile Corp. v. Maloney,* 909 F.2d 79,

---

gation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.
 (3) Exceptions.
 (A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to

 (i) an attorney for the government for use in the performance of such attorney's duty; and
 (ii) such government personnel (including personnel of a state or subdivision of a state) as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.

83 (2d Cir.1990); *H.L. Hayden Co. of New York v. Siemens Medical Systems, Inc.,* 797 F.2d 85, 88 (2d Cir.1986), and we have no reason to think that *Interstate Dress* does not still represent the law in this circuit. Cf. *In re Grand Jury Proceedings,* 851 F.2d 860, 863–65 (6th Cir.1988) (discussing decisions of various circuits on the Rule 6(e) issue).

 In this case, the taxpayers concede that the revenue agent originally assigned to the Tax Court matter by the Commissioner did not use either the Chase, Citibank or CBT records in his preparation of the report providing the basis for the statutory notices of deficiency. The IRS had an independent public source for its knowledge that the grand jury had possession of the bank records. This is clear because the account numbers, bank names and locations, and annual information concerning deposits and withdrawals were specifically set forth in the publicly-filed indictments of Mycek and DiLeo. In response to the December 1987 trial subpoenas, the three banks also indicated to the IRS that the records had been previously provided to the Southern District grand jury in response to grand jury subpoenas served years earlier. Before the IRS received the records, all references to the grand jury were removed. The IRS was therefore not learning anything about the grand jury proceedings from the bank records that it did not already know prior to obtaining them. The records admitted into evidence in the Tax Court were sought for their own sake and not to learn what took place before the grand jury and clearly did not compromise the secrecy of the grand jury's deliberations. Under *Interstate Dress,* the records were not "matters occurring before the grand jury" within the meaning of Rule 6(e).

*Disclosure order*

The taxpayers contend, and Judge Broderick held, that even if the bank records were not "matters occurring before the grand jury," Rule 6(e) still prohibited their disclosure absent a prior order from the district court. The taxpayers go on to argue that the records had been turned over to the IRS long before Judge Broderick's order and that the order could not "retroactively" cure the illegal disclosure. We do not accept this argument.

We share Judge Broderick's concern over the government's unduly informal manner in handling the bank records. It is certainly advisable for a government official to seek a judicial declaration that particular documents are not "matters occurring before the grand jury" rather than simply disclosing them and risking contempt and perhaps other sanctions because of an incorrect assumption. Nevertheless, the express terms of Rule 6(e) require a court order only to permit disclosure of material that falls within that category. Thus, the disclosure did not violate Rule 6(e) and no order, retroactive or otherwise, was absolutely necessary to validate it. In *Interstate Dress,* moreover, this court specifically addressed the requirements for disclosure of matters not occurring before the grand jury and noted that "[d]ocuments produced pursuant to a grand jury subpoena remain the property of the person producing them ... and their inspection by persons other than the grand jury and the prosecuting attorneys is therefore dependent upon the consent of the owner *or* upon a court order." 280 F.2d at 54 (citations omitted) (emphasis added). Cf. *In re Special March 1981 Grand Jury,* 753 F.2d at 579. Here, the owners of the relevant records—Chase, Citibank and CBT—gave their consent prior to the disclosure of the documents to any revenue agent involved in the civil case.

The taxpayers argue that the consents obtained from the banks were illusory and therefore failed to satisfy the requirements of *Interstate Dress.* In this case, the government retained custody of the documents at issue under claim of right from July 1985, when the grand jury investigation concluded, until December 1987, when the subpoenas were served. Since the IRS attorneys knew this fact when they solicited the consent of the banks, the taxpayers contend that the consents were irrelevant to disclosure. We reject this argument.

It is undisputed that the banks were asked for their consent to disclosure of the records. It is also undisputed that prior to this request for consent, there had been no disclosure to IRS agents, even though the relevant documents had been in the government's possession "under claim of right" for several years. After consent was obtained, the documents were disclosed. The banks have not voiced any objections to this disclosure nor have the taxpayers made a plausible argument that the banks had any interest in withholding their consent to the disclosure. Because no court order was required and because the government obtained consent as required under *Interstate Dress*, the bank records were properly disclosed and the Tax Court properly admitted them into evidence.

*Allegedly wrongful conduct by the IRS*

■ The taxpayers argue that the proceedings in the Tax Court were so defective that, at the very least, the burden of proof with respect to the alleged deficiencies should have been shifted to the IRS. First, the taxpayers contend that the Commissioner possessed all the grand jury records and used those that assisted the IRS while refusing production of those that would have assisted the taxpayers. Therefore, the taxpayers assert, the Commissioner had an unfair discovery advantage and the Tax Court should have shifted the burden of proof to the Commissioner. We should accordingly vacate the deficiency judgments. As the Commissioner argues, however, the assertions upon which this argument is based are unsupported by the record.

At the conclusion of the grand jury proceedings, Agent Kirschen, with the authorization of the Assistant United States Attorney, removed the specific bank records in question. Kirschen was authorized to possess these records as a government employee "deemed necessary" to assist the prosecutor under Fed.R.Crim.P. 6(e)(3)(A)(ii). See supra note 1. In December 1987, the Commissioner's trial subpoena requested only the bank records, the existence of which was evident from public documents. Kirschen provided only those specific documents, after removing all references to the grand jury, after consents were obtained from the owners of the records. Thus, the Commissioner did *not* have open access to the grand jury records.

Moreover, with regard to the information and records sought by the taxpayers, they in fact sought neither a court order nor the consent of the owners of the records prior to disclosure, as required by *Interstate Dress*. The taxpayers have therefore failed to demonstrate that they were denied access to grand jury materials to which they were entitled, an important qualification that distinguishes the bank records introduced by the Commissioner.

■ The taxpayers also claim that Agent Kirschen should not have been present in the courtroom during the civil trial. The Commissioner requested that Kirschen be allowed to remain for the limited purpose of providing certified documents and hearing testimony to determine whether there was any reason to believe that perjury had been committed. The taxpayers assert that the presence of the special agent was improper because he had had access to grand jury material under Rule 6(e)(3)(A)(ii). This assertion is inconsistent with the principle that a government employee who has participated in a criminal prosecution may participate in the civil phase of the dispute without obtaining a court order to do so under Rule 6(e). See *United States v. John Doe, Inc. I*, 481 U.S. 102, 107–111, 107 S.Ct. 1656, 1659–61, 95 L.Ed.2d 94 (1987); cf. *In re Disclosure of Grand Jury Material*, 821 F.2d 1290, 1292 (7th Cir.1987). As the Supreme Court stated in *United States v. John Doe, Inc. I*, the prohibition in Rule 6(e) is against *disclosing* grand jury matters to another. 481 U.S. at 109, 107 S.Ct. at 1660. There is no evidence that Kirschen disclosed any Rule 6(e) information to counsel for the Commissioner. There was therefore nothing improper about his presence as a representative of the Commissioner at the trial.

Since we find nothing improper about Kirschen's conduct, we have no occasion to consider whether or not shifting the burden of proof would have been an appropriate remedy for the sort of impropriety alleged by the taxpayers. Because we find that

the admission of the bank records into evidence was neither improper nor unfair, it is also unnecessary for us to reach the questions whether the proper remedy for a Rule 6(e) violation is suppression rather than a contempt of court charge and whether, if the bank records were suppressed, there would have been sufficient evidence of fraud to support the extension of the statute of limitations for the tax deficiencies.

We have considered all of the taxpayers' remaining arguments and none justify reversal of the Tax Court. We therefore affirm.