T.C. Memo. 1996-184


UNITED STATES TAX COURT


ARA ERESIAN AND EVELYN ERESIAN, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21523-92.                    Filed April 16, 1996.


    Held: respondent's deficiency determinations are
sustained; held, further, petitioners are liable for
additions to tax under sec. 6651(a)(1), I.R.C., sec. 6653
(a)(1), I.R.C., and sec. 6661, I.R.C., for 1988; and for the
accuracy-related penalty under sec. 6662(a), I.R.C., for
1989.


Ara Eresian and Evelyn Eresian, pro se.

Paul Colleran, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NIMS, Judge:  Respondent determined the following income tax deficiencies, additions to tax, and penalty with respect to petitioners' 1988 and 1989 taxable years:

| Taxable Year | Deficiency | Additions to Tax | | | Penalty |
| | | Sec. 6651(a)(1) | Sec. 6653(a)(1) | Sec. 6661 | Sec. 6662(a) |
| --- | --- | --- | --- | --- | --- |
| 1988 | $28,495 | $2,479 | $1,425 | $7,124 | -0- |
| 1989 | 4,550 | -0- | -0- | -0- | $910 |

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the years in issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions, the issues for decision are:

1.  Did petitioners have unreported income of $61,353 and $4,666 for 1988 and 1989, respectively?

2.  Did petitioners have unreported interest income of $84 and $214 for 1988 and 1989, respectively?

3.  Did petitioners have a loss of $350,000 on the disposition of real estate in 1988?

4.  How much are petitioners entitled to deduct as Schedule A itemized deductions for 1988 and 1989?  The following amounts are in contention:

| Category | 1988 | 1989 |
|---|---|---|
| Mortgage Interest............ | $2,046 | $2,364 |
| Personal Interest............ | 776 | 334 |
| Charitable Contributions..... | 7,763 | 6,493 |
| Legal Expenses............... | 5,897 | 5,045 |
| Total | 16,482 | 14,235[1] |

5.  Did petitioners receive $5,409 in Social Security benefits during 1988, of which $2,705 should have been included in gross income under section 86(a)(1)?

6.  Are petitioners liable for the addition to tax for late filing under section 6651(a)(1) for 1988?

7.  Are petitioners liable for the addition to tax for substantial understatement of income tax liability under section 6661 for 1988?

8.  Are petitioners liable for the addition to tax for negligence under section 6653(a)(1) for 1988 and for the negligence penalty under section 6662 for 1989?

Some of the facts have been stipulated and are found accordingly.  The stipulation of facts and attached exhibits are incorporated herein by this reference.

-----

[1]    This number comes from respondent's Notice of Deficiency.  There is a $1 addition error.

FINDINGS OF FACT

Petitioners resided at 62 Westwood Road, Shrewsbury, Massachusetts, at the time they filed their petition. During the years in issue, petitioners filed joint returns. Their 1988 return was not filed until January 31, 1990.

Petitioner wife, Evelyn Eresian (Evelyn), has been a title examiner for approximately 54 years, and for several years, including 1988 and 1989, she has owned one-third of Hobbs Abstract Company. Petitioners reported $58,000 of wages from the company for 1989. They also reported $83,000 of wages in 1988, but the source of the 1988 wages is uncertain.

During the years in issue, Evelyn and her son, Ara Eresian, Jr. (Ara), held as trustees four rental properties, most improved with apartment houses. At least one of the properties, 16 Ripley Street, Worcester, Massachusetts, was completely rented as of January 28, 1988. Its five apartments rented for a total monthly rental of $2,050. Nevertheless, none of the rental income from any of these properties was reported on any Federal income tax return for 1988 and 1989. The trust owning the properties failed to file Federal income tax returns for the years in issue, and petitioners' reported no rental income on their own returns. Moreover, while both Evelyn and Ara, the two trustees, attended trial, they failed to identify the beneficiaries of the trust.

Petitioners failed to provide respondent with adequate books and records. Respondent, therefore, reconstructed petitioners' 1988 and 1989 gross income using the bank deposits method of proof. The following is a summary of respondent's analysis:

| Deposits to Northeast Savings Bank accounts: | 1988 | 1989 |
|---|---|---|
| 1. #1395781 | -- | $6,245.22 |
| 2. #21 02 040311681 | -- | 740.00 |
| 3. #21 02 040194580 | $19,350.52 | 107,302.59 |
| 4. #21 02 140784006 | 109,587.38 | 3,087.44 |
| 5. #21 00 144789746 | 10,481.00 | 5,647.00 |
| Total | 139,418.90 | 123,022.25 |
| **Less:** | | |
| 1. Transfers | 5,358.71 | 40,588.32 |
| 2. Funds available for deposit | | |
| Wages less withholding | 59,797.42 | 46,909.88 |
| IRA distributions | 7,500.00 | 25,232.00 |
| Social Security | 5,409.00 | 5,627.00 |
| Total | 78,065.13 | 118,357.20 |
| Unexplained bank deposits: | 61,353.77 | 4,665.05 |

The $350,000 loss revolves around a real estate transaction of petitioners' son, Ara. On May 3, 1988, Ara established the King Realty Trust. Immediately afterward, the trust acquired several properties on King Street and Oread Place in Worcester, Massachusetts (the King Trust Properties). The trust then, in early May, encumbered the properties by mortgages with three lenders. The total amount of the encumbrances was $1,750,000.

Later that same year, on November 14, 1988, one of the lenders, Petron Mortgage Company Limited Partnership (Petron)

initiated foreclosure proceedings against the King Trust Properties. (What became of the other lenders is unknown). Petron then held a public foreclosure auction at which it was the highest bidder, with a bid of $850,000. The foreclosure deed transferred the King Trust Properties to Petron on June 21, 1989.

A little more than a month later, on August 7, 1989, Evelyn filed a complaint against Petron, claiming that she was a junior mortgagee and seeking to void Petron's foreclosure sale for failure to give her proper notice. Her claim to mortgagee status rested on a $350,000 note and mortgage, both of which indicate that they were executed contemporaneously with the formation of the King Trust on May 3, 1988. There is no credible proof that Evelyn actually transferred $350,000 to the King Trust. Moreover, the mortgage was not recorded until November 2, 1988. At trial, she explained this delay, "I never hoped to get the money back until this opportunity." Evelyn also never attempted to enforce this obligation. She never received the principal or interest due her; rather she received "love and affection".

## OPINION

Petitioners' testimony is internally inconsistent and inconsistent with other evidence. Evelyn testified that she had no real estate interest during 1988 and 1989, but later testified that she and her son held four properties in trust and that she was part owner of the King Trust Properties. Furthermore, while

she claimed that she was a mortgagee in her suit against Petron, she now claims that she had an equity interest in the King Trust Properties.

Some of the documents in evidence dealing with Evelyn's interest in the King Trust Properties are inherently contradictory. Some of the documents support her claim as a mortgagee, but because she now claims an equity interest, she points to other documents. One of these documents, entitled "Agreement to Form a Joint Venture", has an execution date of August 3, 1988, which precedes Evelyn's suit against Petron by more than a year. The document purports to make her a 25-percent partner in the King Street venture in return for forgiveness of its $350,000 indebtedness to her. She asserts that this agreement entitles her to a $350,000 loss from the foreclosure sale.

Petitioners' testimony was also evasive. Evelyn, while a trustee of several rental properties, denied knowing who the beneficiaries of the trust were or who collected the rent. Presumably the other trustee, her son Ara, would have known this information, but while he was at the trial, he failed to testify. When Evelyn was asked about one of the properties, 10 Bourne Street, Worcester, Massachusetts, she recognized the property as a three-family home, but then responded, "I don't remember. I had something to do with it, but I don't remember in what

capacity." After respondent showed her a deed which indicated that she had owned the property prior to December 23, 1987, and respondent asked if the deed refreshed her memory, she replied, "No, it doesn't." When questioned further, she finally admitted that she had owned the property, but she asserted, "I haven't even been on that property."

We find no flaw in respondent's reconstruction of petitioners' income using the bank deposits method, and petitioners have pointed to none. The use of the bank deposits method for computing income has long been sanctioned by the courts. When a taxpayer keeps no books or records and has large bank deposits, the Commissioner is not arbitrary or capricious in resorting to the bank deposits method. DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992). Because petitioners failed to produce books and records, respondent reconstructed income from petitioners' bank deposits. Respondent added petitioners' deposits together, identified any deposits which represented interaccount transfers, and subtracted the known funds that petitioners had available during the years for deposit. Petitioners have failed to show that respondent improperly reconstructed their gross income.

Petitioners, while bearing the burden of proof, Rule 142, have introduced no credible evidence that disproves any element of respondent's deficiency determination--no books or records and

no underlying documentation. Respondent's determination is, therefore sustained as to the inclusion of unreported income from an unknown source of $61,353 and $4,666 in 1988 and 1989, respectively, unreported interest income in the amounts of $84 and $214 for 1988 and 1989, respectively, and the disallowance of the $350,000 loss for 1988. Similarly, respondent's determination is also sustained as to itemized deductions in the amounts of $16,482 and $14,235 for 1988 and 1989, respectively, and taxable Social Security benefits in the amount of $2,705 for 1988.

Respondent determined an addition to tax for late filing of petitioners' income tax return for 1988 under section 6651(a)(1) in the amount of $2,479. Petitioners filed their 1988 return, the extended due date of which was October 15, 1989, on January 31, 1990. They have offered no explanation for this lateness. Petitioners are, therefore, liable for the addition to tax for late filing as determined by respondent.

Respondent also determined an addition to tax for substantial understatement of income tax liability for 1988 under section 6661 in the amount of $7,124. Because we have sustained respondent's deficiency determination, petitioners' understatement exceeds 10 percent of the amount required to be shown on their return, and it also exceeds $5,000. Petitioners

are, therefore, liable for the addition to tax for substantial understatement as determined by respondent.

Respondent determined an addition to tax for negligence under section 6653(a)(1) for 1988 in the amount of $1,425 and an accuracy-related penalty for negligence under section 6662 for 1989 in the amount of $910. Section 6662(a) imposes a 20-percent accuracy-related penalty based upon any portion of an underpayment of tax required to be shown on a return if, as provided in section 6662(b), the underpayment is attributable, among other things, to negligence or disregard of rules or regulations, or any substantial understatement of income tax. Section 6662(c) includes in the definition of "negligence" any failure to make a reasonable attempt to comply with the Internal Revenue title. Petitioners have the burden of proof. Bixby v. Commissioner, 58 T.C. 757 (1972); see Grzegorzewski v. Commissioner, T.C. Memo. 1995-49. They have failed to present any evidence refuting respondent's determination of negligence. Respondent's determination of negligence is sustained.

To reflect the above,

Decision will be entered for respondent.