T.C. Summary Opinion 2002-154


UNITED STATES TAX COURT



MARCEL TOTO NGOSSO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13291-01S.          Filed December 11, 2002.



<u>Richard P. Rosenblatt</u>, for petitioner.

<u>Nancy C. Carver</u>, for respondent.



PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard
pursuant to the provisions of section 7463 of the Internal
Revenue Code in effect at the time the petition was filed.  The
decision to be entered is not reviewable by any other court, and
this opinion should not be cited as authority.  Unless otherwise
indicated, subsequent section references are to the Internal

Revenue Code in effect for the year in issue, and all Rule

references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal

income tax of $12,161 and an accuracy-related penalty under

section 6662(a) of $784 for 1996.[1]  After concessions by

petitioner,[2] the issues for decision are:  (1) Whether petitioner

failed to report income of $39,444; (2) whether petitioner is

entitled to the claimed dependency exemption deduction; and (3)

whether petitioner is liable for an accuracy-related penalty

under section 6662.

Petitioner resided in Hyattsville, Maryland, at the time he

filed the petition.  Some of the facts have been stipulated and

are so found.  For convenience we combine our findings of fact

and conclusions.

---

[1]  Petitioner timely filed his 1996 tax return on or about
Apr. 15, 1997.  The notice of deficiency at issue was mailed on
Aug. 15, 2001.  We note that the general 3-year period of
limitations for the 1996 tax year expired on Apr. 15, 2000, but
petitioner has not pleaded that the period of limitations has
expired.  Sec. 6501(a).  As we conclude below, petitioner has
omitted from gross income an amount properly includable therein
which is in excess of 25 percent of the amount stated in the
return.  Thus, if the statute of limitations were in issue, we
would conclude that the 6-year period of limitations under sec.
6501(e)(1)(A) is applicable.

[2]  Petitioner concedes that he is not entitled to the
claimed head-of-household filing status but is entitled to single
filing status, and that he is not entitled to the claimed earned
income credit.

During 1996, petitioner was employed part-time by a light fixture store. He reported $1,774 in wages received from his employer.

Petitioner also assisted a tax return preparer, Bakary Diomande (Mr. Diomande), with the preparation of Federal income tax returns; however, the exact nature and extent of petitioner's role in the preparation of tax returns is unclear. Although he testified that he was not a tax return preparer, petitioner also explained at trial that for tax returns that are filed electronically, "the tax preparer and the taxpayer have to sign that * * *. And if it's me who has prepared his taxes, my signature would appear there."

Petitioner testified that he received and cashed checks from Mr. Diomande's clients, which he then paid over to Mr. Diamonde, because Mr. Diomande did not accept checks as payment from his clients. The record contains a money order and numerous checks made payable to petitioner or a third party that petitioner either cashed or deposited into his Chevy Chase Bank account. For example, petitioner's Chevy Chase Bank account statements reflect that petitioner cashed in part and deposited in part a U.S. Treasury refund check issued in 1996 to Somia Essomba Toto Ngosso, and deposited a U.S. Treasury refund check issued in 1996

to Constance Njombua Toto Ngosso.[3]  Petitioner's bank account records, however, do not clearly indicate that petitioner withdrew funds or wrote checks for the exact or similar amounts to support his theory that he acted as a conduit for Mr. Diomande.

Petitioner reported $7,700 in gross income on Schedule C, Profit or Loss From Business, attached to his Federal income tax return for the 1996 tax year.  Petitioner reported "Income Tax Prep" as the principal business.

Petitioner, a native of the Republic of Cameroon, and Epee Ndolo Emmanuel (Mr. Emmanuel), his uncle who lives in Yaoundé, Cameroon, engaged in a series of transactions in which they effectively exchanged U.S. dollars for Cameroonian francs (CFA francs) for the benefit of friends, business associates, and strangers.  Petitioner engaged in a "currency exchange transaction" and explained it as follows:  Petitioner received a sum of U.S. dollars in cash from an individual who desired to send money to a third party in Cameroon; petitioner calculated the equivalent amount of CFA francs using the exchange rate for that day; petitioner either deposited the U.S. dollars he received into one of two bank accounts or held the cash in his house on behalf of Mr. Emmanuel; petitioner faxed the information

---

[3]  There is nothing in the record indicating that these individuals are related to petitioner.

concerning the U.S. dollar-CFA franc exchange rate to both Mr. Emmanuel and the designated recipient of the CFA francs in Cameroon; Mr. Emmanuel then paid the designated recipient of the CFA francs in Cameroon the equivalent amount of CFA francs in cash; and petitioner later purchased various items in the U.S., such as cars and computers, and shipped them to Mr. Emmanuel.

Petitioner asserts that he did not charge a fee for his services. Three witnesses testified on petitioner's behalf that they engaged petitioner's services, free of charge, in the exchange of U.S. dollars for CFA francs. None of the witnesses provided any documentary evidence to support the testimony.

As an example of the final step in the currency exchange transaction petitioner presented some documents and testimony of items purchased and sent to Cameroon. Petitioner purchased a Jeep Cherokee in Virginia for approximately $20,000 in March or April 1996. He paid for the Jeep Cherokee with cash that he either kept in his house or withdrew from one of his bank accounts in increments of $2,000 or $3,000. At trial petitioner was unable to indicate which withdrawals or cash received from a deposit reflected on his bank account statements were used to pay for the Jeep Cherokee. Petitioner produced a bill of lading reflecting the shipping of the Jeep Cherokee from the U.S. to Cameroon in November 1996. Mr. Emmanuel's name does not appear

on the bill of lading because the Jeep Cherokee was received by a shipping agent.

Petitioner did not produce receipts or shipping documents for other items that he purchased for, and shipped to, Mr. Emmanuel. Petitioner did not produce other records from the currency exchange transactions, such as the letters faxed to Mr. Emmanuel or the designated recipient, because "there was no need to keep it" once the transaction was over. Petitioner explained that he accounted for the U.S. dollars that he held on behalf of Mr. Emmanuel by using his bank account statements.

The record contains account statements from a Citibank account that petitioner co-owned with two other individuals, Ebenezer Soh Kengne and Daniel P. Fleret. Petitioner did not explain, and it is not clear from the record, who owned the funds in the Citibank account.

Respondent, utilizing a bank deposits methodology, determined that petitioner underreported $39,444 of income.[4] Respondent's agent explained at trial that respondent first examined petitioner's income tax return for the 1996 tax year in connection with a tax return preparer penalty. Respondent determined that petitioner had unexplained bank deposits of

_____

[4] Petitioner testified at trial that he received income from his family in Cameroon and rental income from two houses that he owns in Cameroon. Respondent did not make a determination or a claim with respect to these two sources of income. Therefore, such matter is not at issue.

$104,239 in 1996.  From the unexplained bank deposits respondent

deducted the following amounts that were not includable in

petitioner's income:

| | | |
|---|---|---|
| Unexplained bank deposits | | $104,239 |
| Income tax refund checks | $21,726 | |
| 1997 receipts | 2,000 | |
| Examiner error | 1,624 | |
| Currency transactions | 39,445 | |
| Total | | 64,795 |
| Underreported income | | 39,444 |

Petitioner's position is that the currency exchanges are

"net transactions" and that the money he received is not income

to him because he acted as a conduit for Mr. Emmanuel.

Gross income means all income from whatever source derived.

Sec. 61.  When a taxpayer fails to provide adequate records

substantiating income, the Commissioner is authorized to

reconstruct the taxpayer's income by using any reasonable method

that clearly reflects income, including an indirect method.  Sec.

446(b); Holland v. United States, 348 U.S. 121 (1954).  The

reconstruction need only be reasonable in light of all facts and

circumstances.  Clayton v. Commissioner, 102 T.C. 632, 643

(1994); Giddio v. Commissioner, 54 T.C. 1530, 1532 (1970).

The Commissioner is authorized to use bank deposit records

to reconstruct a taxpayer's income.  Clayton v. Commissioner,

supra at 645 (citing DiLeo v. Commissioner, 96 T.C. 858, 867

(1991), affd. 959 F.2d 16 (2d Cir. 1992)).  When a taxpayer keeps

no books or records and has large bank deposits, the

Commissioner's use of the bank deposits method is not arbitrary or capricious. Id. Bank deposits are prima facie evidence of income. Id. In calculating a taxpayer's taxable income, the Commissioner must take into account any nontaxable source or deductible expense of which he has knowledge. Id. at 645-646.

Generally the taxpayer bears the burden of proof. Rule 142(a)(1). The burden of proving facts relevant to the deficiency may shift to the Commissioner under section 7491 if the taxpayer establishes compliance with the requirements of section 7491(a)(2)(A) and (B) by substantiating items, maintaining required records, and fully cooperating with the Secretary's reasonable requests. Section 7491 also places the burden of production upon the Secretary with respect to additions to tax. Sec. 7491(c). Section 7491 is effective with respect to court proceedings arising in connection with examinations by the Commissioner commencing after July 22, 1998, the date of its enactment by section 3001(a) of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, 112 Stat. 685.

It is not clear from the record when respondent commenced the examination of petitioner's return; however, petitioner has not alleged that section 7491 is applicable to this case. Even if section 7491 were to apply, petitioner has not established that he complied with the requirements of section 7491(a)(2)(A)

and (B) to substantiate items, maintain required records, and fully cooperate with respondent's reasonable requests. Therefore, the burden of proof remains with petitioner. Further, based on our findings and conclusion, the burden of proof does not play a role with respect to the accuracy-related penalty under section 6662.

Respondent utilized the bank deposits method to reconstruct petitioner's income because petitioner did not present any books and records reflecting the income reported on his return. We accept petitioner's and the witnesses' generalized testimony that petitioner engaged in some currency exchange transactions, and that a certain amount of the bank deposits is not income to petitioner. However, the documents and testimony are not necessarily consistent with the amounts reported on the return, and petitioner did not explain the flow of cash into and out of his bank accounts. Petitioner acknowledged at trial that he failed to retain records of the currency exchange transactions. As indicated above, respondent took into account $21,726 of income tax refund checks issued to third parties and cashed by petitioner on their behalf, and $39,445 of currency exchange transactions with Mr. Emmanuel as nontaxable sources of income.

Under these facts, we conclude that respondent's reconstruction of petitioner's income was reasonable. We are

satisfied that petitioner underreported income, and respondent is sustained on this issue.

The next issue for our decision is whether petitioner is entitled to the claimed dependency exemption deduction. Petitioner claimed a dependency exemption deduction for Shanita Edwards (Shanita) on his return for 1996. Shanita, who was born in 1984, is the daughter of Barbara Nicholson (Ms. Nicholson), who was petitioner's girlfriend during the year at issue.

Petitioner testified generally that he provided for all of the food and shelter for Shanita, and that Ms. Nicholson provided for only Shanita's clothing. Petitioner admitted that he did not know whether Shanita's father or any other relative provided any of her support, and he did not know whether Ms. Nicholson received any form of Government benefit. Petitioner produced copies of Shanita's birth certificate and Social Security card.

Petitioner alleges that Shanita, Ms. Nicholson, and Kimberly Nicholson (Kimberly), also a minor and a daughter of Ms. Nicholson, lived with him in his apartment in Silver Spring, Maryland, during 1996. Petitioner also alleges that Guy Behl (Mr. Behl) lived in his apartment during 1996.

A taxpayer may be allowed a deduction for a dependent over half of whose support is provided by the taxpayer. Secs. 151(c)(1), 152(a). A dependent includes an individual who, for the taxable year, has as her principal place of abode the home of

the taxpayer and is a member of the taxpayer's household.  Sec.
152(a)(9).  It is necessary that the taxpayer both maintain and
occupy the household.  Sec. 1.152-1(b), Income Tax Regs.  It is
not necessary that the dependent be related to the taxpayer.  Id.

The term "support" includes food, shelter, clothing, medical
and dental care, education, and the like.  Sec. 1.152-1(a)(2)(i),
Income Tax Regs.  The amount of support that the claimed
dependent received from the taxpayer is compared to the total
amount of support the claimed dependent received from all
sources.  Id.  The total amount of support for each claimed
dependent furnished by all sources during the year in issue must
be established by competent evidence.  Blanco v. Commissioner, 56
T.C. 512, 514 (1971).

Petitioner's testimony that he provided Shanita's food and
shelter lacks credibility, and we need not accept it.  Tokarski
v. Commissioner, 87 T.C. 74, 77 (1986).  Additionally, petitioner
did not provide any documentary evidence to support his
testimony.  We are not convinced that petitioner provided more
than half of Shanita's support.  Moreover, it is not clear that
Shanita had petitioner's apartment as her principal place of
abode during 1996.  Accordingly, the claimed dependency exemption
deduction for Shanita is denied.

The next issue for our decision is whether petitioner is
liable for a penalty under section 6662.  Section 6662 provides

that if any portion of any underpayment required to be shown on a return is due to negligence or disregard of the rules or regulations, then a taxpayer will be liable for a penalty equal to 20 percent of the underpayment of tax required to be shown on the return that is attributable to the taxpayer's negligence or disregard of the rules or regulations. Sec. 6662(a) and (b)(1). "Negligence" includes any failure to make a reasonable attempt to comply with the provisions of the Code. Sec. 6662(c). "Disregard" includes any careless, reckless, or intentional disregard. Id.

The penalties provided for in section 6662 will not be imposed with respect to any portion of an underpayment if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Sec. 6664(c)(1). Whether the taxpayer has acted with reasonable cause and in good faith is determined by relevant facts and circumstances, including the taxpayer's own efforts to assess his proper tax liability. Stubblefield v. Commissioner, T.C. Memo. 1996-537; sec. 1.6664-4(b), Income Tax Regs.

Respondent determined in the notice of deficiency that petitioner is liable for an accuracy-related penalty of $784 under section 6662(a) for 1996 because of negligence or disregard of rules or regulations.

At trial petitioner was unable to provide detailed and reliable testimony concerning the deposits in and withdrawals from his bank accounts. Petitioner's testimony concerning his income from tax return preparation and the currency exchange transactions was, at best, vague and inconsistent, and his testimony concerning support for Shanita was not credible or supported by any documentary evidence. He did not maintain records or accurately report his gross income. We are further satisfied that respondent's reconstruction of petitioner's income was reasonable. We conclude that his underpayment is attributable to negligence and disregard of the rules or regulations, and petitioner has not shown reasonable cause or that he acted in good faith with respect to the underpayments.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.