T.C. Memo. 2012-86

UNITED STATES TAX COURT

HIZI MWANGACHUCHU AND UMUBERA MWANGACHUCHU,
Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15558-10.                    Filed March 26, 2012.

Paul A. Nettleford, for petitioners.

Adam P. Sweet, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, Judge: Respondent determined a deficiency of $205,781 in

petitioners' Federal income tax for 2006 and an accuracy-related penalty of

$41,036.20 pursuant to section 6662(a) for that year.

The issues for decision are (1) whether petitioners failed to report

$544,675.02 of gross receipts for 2006 on Schedule C, Profit or Loss From

Business; and (2) whether petitioners are liable for the accuracy-related penalty under section 6662(a)[1] for 2006.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference and made a part of the record.

Petitioners, who are resident aliens of the United States, had a legal residence in Silver Spring, Maryland, when they filed their petition.

Hizi Mwangachuchu (petitioner) arrived in the United States in 1996, presumably on a visa, from the Democratic Republic of the Congo (Congo). Sometime in 2001 petitioners purchased a home in Silver Spring, Maryland, for $618,000. They paid the entire purchase price of their home in cash. It was the

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2]There are five uncontested issues subject to computational adjustments relating to a claimed tuition and fees deduction of $4,000; whether petitioners' claimed deductions should be reduced by $9,421; whether petitioners' claimed exemption deductions should be reduced by $13,200; whether petitioners are entitled to a claimed education credit of $2,650; and whether petitioners are liable for self-employment tax of $26,268. All of these adjustments are reflected in the notice of deficiency for 2006 that respondent sent to petitioners on April 19, 2010.

primary asset they owned in the United States, and they continued to own it through 2006.

Petitioner owned and operated a mine called Mwangachuchu Hizi International (MHI) in the Democratic Republic of Congo during the taxable year 2006. MHI was an incorporated entity in the Congo.

Petitioners did not report any income from MHI on their 2006 Federal income tax return. They did not operate any business, or earn any income, in the United States during 2006.

Petitioner Umubera Mwangachuchu lived in the United States with her four children during the year 2006. Ms. Mwangachuchu did not earn any income while living in the United States in that year. The money for her living expenses during 2006 was provided by petitioner, who lived outside the United States during 2006. Her living expenses in that year totaled $246,864.96. The source of those living expenses is taxable income petitioner received in 2006.

Petitioner sent $420,115.80 to MHI during 2006. The source of $383,810.06 of that amount was taxable income that petitioner received in that year.

On April 26, 2007, petitioners filed their joint Federal income tax return for 2006. The only income they reported on their return, on Schedule E, Supplemental Income and Loss, was $90,000 in rent received from real estate called "Goma Land, Goma, Republic of Congo." After claiming a domestic production activities deduction of $4,000, they reported adjusted gross income of $86,000, itemized deductions of $28,708, exemptions of $19,800, taxable income of $37,492, education credits of $2,650, total tax of $2,216, total payments of $4,560, and a refund of $2,265.

Internal Revenue Service (IRS) Revenue Agent James E. Downs was assigned to examine petitioners' income tax return for 2006. He was an experienced agent who had conducted hundreds of audit examinations. When Agent Downs discovered that petitioners' cash expenditures during 2006 did not match the income reported on their tax return, that they reported only $90,000 of income, and that petitioner owned and operated the MHI mine in the Congo, he requested petitioner to provide him with the books and records relating to the MHI business to show how petitioner calculated his taxable income. Although petitioner was given several opportunities to furnish MHI books and records to Agent Downs, he failed to do so. Agent Downs then decided to use an indirect net worth plus expenditures method analysis to determine petitioners' taxable income

for 2006. He used petitioners' net worth in 2001 as the starting point of his report. He traced changes to petitioners' net worth during the taxable years 2002, 2003, 2004, and 2005. He then determined the value of petitioners' net worth and expenditures at the end of 2005 and at the end of 2006. He used the difference in value between petitioners' net worth and expenditures at the end of 2005 and at the end of 2006 to determine the amount of their unreported income for 2006.

Agent Downs made the following computation of net worth relating to petitioners' unreported income for 2006 of $544,675.02, as determined in respondent's notice of deficiency sent by certified mail to petitioners on April 19, 2010:

|  | Taxable Year | | | | | | |
|---|---|---|---|---|---|---|---|
| Assets | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 |
| Total assets |  | $1,287,592.49 | $1,287,592.49 | $1,287,592.49 | $1,287,592.49 | $1,367,192.84 | $1,805,362.88 |
| Total liabilities | -0- | -0- | -0- | -0- | -0- | 33,000.00 | 87,359.88 |
| Net worth | 659,098.29 | 1,287,592.49 | 1,287,592.49 | 1,287,592.49 | 1,287,592.49 | 1,334,192.84 | 1,718,002.90 |
| Net worth prior year |  | 659,098.29 | 1,287,592.49 | 1,287,592.49 | 1,287,592.49 | 1,287,592.49 | 1,334,192.84 |
| Increase (decrease) in net worth | -0- | 628,494.20 | -0- | -0- | -0- | 46,600.35 | 383,810.06 |
| Add |  |  |  |  |  |  |  |
| Personal living expenses | -0- | -0- | -0- | -0- | -0- | -0- | 246,864.96 |
| Less |  |  |  |  |  |  |  |
| Nontaxable income | -0- | -0- | -0- | -0- | -0- | -0- | -0- |
| Federal tax refunds | -0- | -0- | -0- | -0- | -0- | -0- | -0- |
| Corrected adjusted gross | -0- | -0- | -0- | -0- | -0- | -0- | 630,675.02 |
| Adjusted gross income per return | -0- | -0- | -0- | -0- | -0- | -0- | (86,000.00) |
| Unreported income | -0- | -0- | -0- | -0- | -0- | -0- | 544,675.02 |

After petitioner was presented with Agent Downs' report, petitioner produced a purported loan document dated February 21, 2006, stating that petitioner received $420,000 from Gativa Bakagaju Assumpta "as a debt to be paid back at the rate of 3.16% per month." Mr. Assumpta is a relative of petitioner. This document was submitted to Agent Downs in an attempt to show that some of petitioners' unreported income in 2006 came from a nontaxable source. Petitioner first presented a unnotarized version of the purported loan document, written in French, to Agent Downs, and then later presented to him a notarized version of the purported loan document translated into English. Agent Downs did not accept the purported loan document as credible and gave no credit for it in his net worth computation.

Petitioners had a line of credit with Sun Trust Bank during 2006. Agent Downs took into account petitioners' draws on this line of credit in 2006 when computing petitioners' taxable income. The taxable income determined by Agent Downs and in the notice of deficiency for 2006 does not include petitioners' draws on this line of credit.

OPINION

I.  Burden of Proof

Generally, the Commissioner's determinations are presumed correct, and taxpayers bear the burden of proving that those determinations are erroneous.  Rule 142(a); see INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The burden of proof may shift in some cases to the Commissioner under section 7491(a) only if taxpayers introduce credible evidence at trial to support their position, and only if they can establish that they: (1) complied with all substantiation requirements under the provisions of the Code and the regulations; (2) maintained books and records required by the Code and the regulations; and (3) cooperated with reasonable requests made by the IRS.  Sec. 7491(a)(1) and (2).  Petitioners have not satisfied these conditions, and therefore the burden of proof has not shifted to respondent.  Petitioners bear the burden of proof.

II.  Petitioner's Receipt of Unreported Schedule C Gross Receipts of $544,675.02 in 2006 From MHI

Section 61(a) provides that a taxpayer is to include in gross income all income from whatever source derived.  This includes income from sources both within and without the United States.  Sec. 1.1-1(b), Income Tax Regs.  Section

6001 requires all taxpayers to maintain sufficient records to enable the Commissioner to determine their correct income tax liabilities. In the absence of adequate books or records, "the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income", so long as the methodology employed is reasonable in light of all the surrounding facts and circumstances. Sec. 446(b); Holland v. United States, 348 U.S. 121, 130-132 (1954).

This Court, when analyzing the IRS' use of the net worth plus expenditures method to reconstruct taxable income, adheres to the standards set forth by the Supreme Court in Holland. These standards require the IRS to (1) establish, with reasonable certainty, an opening net worth as a starting point from which to calculate future increases in the taxpayer's assets, (2) show a likely source of the unreported income or negate possible sources of nontaxable income, and (3) compute the taxpayer's taxable income by determining the difference between his net worth at the beginning and at the end of the period. Holland, 348 U.S. at 125, 130-132. This increase in a taxpayer's net worth, combined with his nondeductible expenditures, may be considered taxable income. Id. at 125.

Petitioners alleged in their petition that the IRS used an "inappropriate method" to determine their income because they sold no property in 2006 and

because the income determined by the IRS was earned before 2006. Petitioners produced no evidence at trial to support these allegations. Furthermore, the record shows that because of petitioner's failure to cooperate with Agent Downs during the audit examination, the method used to reconstruct their taxable income was a proper one available to him. Agent Downs attempted to work with petitioners to determine what amounts should be included in income. Yet petitioners provided no evidence or books and records during the examination to assist him in determining their taxable income. Consequently, he concluded that the net worth and expenditures method was the correct method to determine petitioners' taxable income for 2006, and the trial record, as indicated below, shows how Agent Downs' report meets the Court's criteria for using that method.[3]

First, Agent Downs established petitioners' opening net worth with reasonable certainty. He determined that petitioners' first asset owned in the United States was a house they bought for cash in 2001. He used 2001, and the house purchased by petitioners for cash, as petitioners' opening net worth and then traced their changes in net worth for subsequent years.

---

[3]The net worth method of determining taxable income for a particular year may be simply stated as a mathematical formula: (1) an increase in net worth (assets minus liabilities) plus (2) nondeductible disbursements, minus (3) nontaxable receipts equals (4) taxable income before exemptions.

Second, Agent Downs was able to show the likely source of petitioners' unreported income and was able to negate sources of nontaxable income. Petitioners' 2006 tax return reported no income from MHI. Agent Downs' report shows that petitioners' change in net worth during the taxable year 2006, combined with their personal expenditures, far exceeds the amount of income petitioners reported on their 2006 income tax return. His report shows that the likely source of petitioners' unreported taxable income for 2006 was MHI.[4] Also, Agent Downs negated sources of nontaxable income when making his report. For example, after learning that petitioners had a line of credit available to them during 2006, Agent Downs did not include petitioners' draws on this line of credit in his determination of unreported taxable income. He also gave petitioners several opportunities to respond to his report and show that the determined income

---

[4]Petitioner was a comptoir owner of MHI located in Goma, Congo. A comptoir is a privately owned business that buys raw ore, such as cassiterite, coltan, or wolframite deposits, used in the production of tin, which is extracted from mines before it is processed. It is not uncommon for comptoir operators to purify the ore. In 1996 petitioner, a former Congolese senator, was a political refugee in the United States after leaving the Congo following the invasion by the Alliance of Democratic Forces for the Liberation of Congo-Zaire. Petitioner returned to the Congo in 1998 and founded MHI with his business associate or partner, an American physician from Baltimore named Robert Sussman. They were interested in mineral deposits in the Masisi Territory.

came from nontaxable sources. Petitioners failed to produce adequate evidence showing any nontaxable sources.

Third, Agent Downs computed petitioners' taxable income for 2006 by determining the difference between net worth and expenditures at the beginning and end of the taxable year 2006. After establishing petitioners' opening net worth in 2001, he traced their yearly changes to net worth and expenditures for every year up until the end of 2005. He then determined petitioners' net worth and expenditures at the end of 2006. He subtracted the determined amount at the end of 2005 from the determined amount at the end of 2006 when computing petitioners' taxable income for 2006. Finally, he subtracted the income reported on petitioners' 2006 tax return from the total amount of computed taxable income for 2006 when determining the amount of unreported income of $544,675.02.

III. Sources of Ms. Mwangachuchu's Living Expenses for 2006

Petitioners did not allege error in their petition as to respondent's determination of unreported taxable income based upon Ms. Mwangachuchu's living expenses of $246,864.96 for 2006. In fact, petitioners stipulated that petitioner's bank accounts reflect that $224,750 was spent for her 2006 personal living expenses in the United States. Thus, they conceded that amount, and they failed to present any evidence at trial showing that respondent's amount of

$246,864.96 was incorrect.  Accordingly, we find and hold that Ms.

Mwangachuchu's living expenses for 2006 were paid from unreported taxable

income petitioner received in that year from his MHI business.[5]

IV.  Petitioners Failure To Produce Credible Evidence Refuting Agent Downs'
     Net Worth and Expenditures Analysis

Petitioners contend that Agent Downs' report is erroneous in two respects.

First, they assert that his report does not account for any money petitioners brought

with them to the United States in 1996.  They rely entirely upon the testimony of

their only witness, Rhonda Bedell, petitioner's sister-in-law and certified public

accountant who prepared their 2006 income tax return.  Her testimony was

somewhat vague and speculative.  She could not say absolutely how much money

they brought with them, but her "ballpark" estimate was "well over $100,000."  No

other evidence was produced to corroborate that amount.  However, despite Ms.

Bedell's unsubstantiated testimony, the amount is irrelevant because whatever

money petitioners did bring to the United States was already accounted for by Agent

Downs in 2001, the year petitioners paid $618,000 cash for their house, as reflected

in their opening net worth.

---

[5]We note that approximately $84,203 of the 2006 living expenses appears to be for home improvements to petitioners' primary residence.

Second, we hold that petitioners failed to meet their burden of proving that petitioner borrowed $420,000 in 2006. Petitioners' counsel submitted at trial a purported loan document dated February 21, 2006, signed by petitioner and a relative, Gatma Assumpta, attempting to show a possible nontaxable source for Agent Downs' determined unreported income. We give no weight to this purported loan document because it was not properly authenticated. We reject for lack of trustworthiness the contention of petitioners' counsel that the purported loan document qualifies as an admissible business record of either petitioner or MHI as required by rule 803(6) of the Federal Rules of Evidence, or qualified as a certified foreign business record under rule 902(12).

For the Court to consider, admit, and rely on the purported loan document it must be authenticated pursuant to rule 901of the Federal Rules of Evidence. Authentication required petitioners' counsel to establish that the purported loan document is what he claimed it to be, which can be accomplished with testimony of a witness with knowledge of the document. See Fed. R. Evid. 901(b)(1). No such witness was called. Neither petitioner nor Mr. Assumpta testified. The only witness who testified regarding the purported loan documents was Ms. Bedell, petitioners' return preparer, who first learned about the document in 2010, four

years after its purported execution.[6]  A document cannot be authenticated when the only witness to testify regarding it has no personal knowledge concerning it. Whatley v. Commissioner, T.C. Memo. 1984-444.  The record also shows that two different copies of the purported loan document were presented to Agent Downs and respondent's counsel.  One copy was written in French and notarized, and the other copy was translated into English and was not notarized.  The record is unclear which copy represents the actual document petitioners' counsel asserts is an original document signed by petitioner.  We note that the French copy of the purported loan document bears a notary seal dated February 26, 2010, which was four years after the parties purportedly signed the document.

Accordingly, in the absence from the record of any credible evidence offered by petitioners to prove their claimed nontaxable sources of income for 2006, we sustain respondent's determination of unreported income of $544,675.02 as set forth in the timely notice of deficiency sent to petitioners on April 19, 2010.

---

[6]Ms. Bedell did not participate in the preparation of any financial reports relating to petitioner or MHI during 2006.  She was not a party to, and had no personal knowledge of, any loans involving petitioner or MHI in 2006, although she apparently knew that petitioner owned MHI in that year.  As petitioners' certified public accountant, who prepared their 2006 Federal income tax return, she did not report any income from MHI on the return because she thought it was a corporation.

## V.  Section 6662(a) Accuracy-Related Penalty for 2006

Section 6662(a) provides for a penalty to be assessed against a taxpayer in the event any part of an underpayment of tax is found to be due to negligence or disregard of rules or regulations or to any substantial understatement of income tax. Sec. 6662(a) and (b)(1) and (2).  The term "substantial understatement" is defined as the greater of:  (1) 10% of the tax required to be shown on the return for the taxable year, or (2) $5,000.  Sec. 6662(d)(1)(A).

Pursuant to section 7491(c) the Commissioner generally has the evidentiary burden of production with respect to the accuracy-related penalty.  However, where the petition fails to state a claim with respect to penalties, the Commissioner has no obligation to produce evidence in support of the determination pursuant to section 7491(c).  See Funk v. Commissioner, 123 T.C. 213, 218 (2004); Swain v. Commissioner, 118 T.C. 358, 364-365 (2002).  Petitioners made no allegation concerning the section 6662(a) accuracy-related penalty of $41,036.20 in their petition.  Therefore, respondent does not bear the burden of production for the penalty.  However, the record clearly shows that respondent has met the burden of production.

Petitioners reported $2,216 of tax due on their 2006 income tax return, and we have sustained respondent's determination that petitioners' 2006 tax liability

was understated by $205,781. This understatement of income tax is substantial as it is greater than both 10% of the tax required to be shown on the return and $5,000. Moreover, petitioners' failure to account for the income from MHI and to maintain adequate books and records is clear negligence. Petitioners have offered no evidence that their underpayment of tax was not due to negligence or disregard of rules and regulations, or that the underpayment was due to reasonable cause or their good faith. Accordingly, we sustain respondent's determination of the accuracy-related penalty of $41,036.20 for 2006.

## VI. Ms. Mwangachuchu's Claim for Innocent Spouse Relief Under Section 6015

In the final paragraph of their opening brief, petitioners raised for the first time the following "innocent spouse claim" for Ms. Mwangachuchu:

> Umubera Mwangachuchu simply signed tax returns and was a part of this litigation solely as a result of that. None of the income reported was attributable to her. Respondent indicates as much in their stipulation of facts. Accordingly, Ms. Mwangachuchu is an innocent spouse and should be treated as such for purposes of this litigation.

Petitioners made no allegation in their petition claiming innocent spouse relief under the provisions of section 6015 for Ms. Mwangachuchu. Nor was the issue raised at the trial of this case. A party may not raise an issue for the first time on brief if the new issue surprises and prejudices the opposing party. See Smalley v.

Commissioner, 116 T.C. 450, 456 (2001) (citing Seligman v. Commissioner, 84 T.C.191, 198-199 (1985), aff'd, 796 F.2d 116 (5th Cir. 1986)).  Accordingly, we conclude it was not properly raised and, therefore, the Court will not consider the issue in this proceeding.  See DiLeo v. Commissioner, 96 T.C. 858, 891-892 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992).

In reaching these holdings, we have considered all of petitioners' contentions, arguments, and requests, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

In view of the foregoing,

Decision will be entered for respondent.