T.C. Memo. 2003-42

UNITED STATES TAX COURT

BRADLEY M. COHEN AND KATHY A. COHEN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9453-00.                      Filed February 24, 2003.

<u>Robert C. Keller</u>, for petitioners.

<u>James N. Beyer</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined a deficiency of $20,556
in petitioners' Federal income tax for 1996.  Respondent also
determined an addition to tax of $3,718 under section 6651(a)(1)
and a penalty of $3,505.20 under section 6662(a).  Subsequently,
through an amendment to answer, respondent asserted an increased
deficiency of $135,120, addition to tax of $27,024, and penalty

of $22,912.80. After concessions, the issues for decision are: (1) Whether petitioners failed to report income reflected in bank deposits controlled by them; (2) whether income reported on Schedule C, Profit or Loss From Business, should be recharacterized as wages and accompanying deductions disallowed; (3) whether petitioners are liable for an addition to tax under section 6651(a); and (4) whether petitioners are liable for an accuracy-related penalty under section 6662(a).

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. In addition, because petitioners failed to comply with an order to supplement their responses to respondent's request for admissions, some facts are deemed admitted pursuant to Rule 90.

Petitioners resided in Ottsville, Pennsylvania, at the time they filed their petition.

### Bradley Mark Cohen Enterprises, Inc.

Bradley M. Cohen (petitioner) was the sole shareholder and sole corporate officer of Bradley Mark Cohen Enterprises, Inc. (BMC), until its dissolution on December 31, 1994. During its

existence, BMC elected to be treated as an S corporation.  BMC maintained a bank account with Corestates Bank (BMC account), and petitioner deposited $59,609.62 into this account during 1996. BMC did not file a 1996 Form 1120S, U.S. Income Tax Return for an S Corporation, to report the $59,609.62 as gross receipts.  The deposits into the BMC account were not reported as income on petitioners' 1996 return or otherwise accounted for by petitioners.

Nationwide Home Improvement Limited

Petitioner was also the sole shareholder and sole corporate officer of Nationwide Home Improvement Limited (NHIL) during 1996.  NHIL conducted remodeling services and aided customers in securing financing for improvements.  Petitioner filed a Form 2553, Election by a Small Business Corporation, to change the status of NHIL from a C corporation to an S corporation effective as of January 1, 1996.  The Internal Revenue Service (IRS) approved the election in 1995.

During 1996, petitioner provided management services to NHIL, working about 20 to 30 hours per week.  These services included petitioner's meeting with clients and conducting sales for NHIL.  NHIL paid $20,680 to petitioner as compensation for the management services provided.  On NHIL's return, the preparer, Joseph M. Grey (Grey), treated this amount as compensation paid to an officer.

NHIL maintained a Meridian bank account (NHIL account), and petitioners deposited $442,623.33 into the account in 1996. Of these deposits, $8,800 were nontaxable insurance proceeds and nontaxable transfers from other bank accounts controlled by petitioners. NHIL filed a Form 1120, U.S. Corporation Income Tax Return, for 1996. NHIL reported gross receipts of $247,743.79 and taxable income of $290.37. Thus, in 1996, NHIL had total unexplained deposits of $186,079.54.

NHIL received four payments totaling $24,180 in 1996 from Green Tree Financial Servicing Corp. (Green Tree income). These payments were not deposited into the NHIL account or any other account controlled by petitioners.

Personal Finances

On November 21, 1995, petitioners purchased a house for $681,000 in Ottsville, Pennsylvania. Petitioners secured a mortgage on the property through GE Capital Mortgage Corp. In order to qualify for the mortgage, petitioners completed a mortgage application, reporting a base monthly income of $14,860 from NHIL.

Petitioners maintained two accounts with Union National Bank during 1996. One account was titled "Nationwide Home Remodelers Group, Bradley Mark Cohen" (Nationwide account), and the second was titled "Bradley Mark Cohen or Kathy Cohen" (Cohen account). In 1996, petitioners deposited $16,017.50 into the Nationwide

account.  Of these deposits, $3,500 were nontaxable transfers from bank accounts controlled by petitioners.  Petitioners also deposited $141,130.52 into the Cohen account during 1996.  Of these deposits, $74,857 represented nontaxable items.  Petitioners had unexplained deposits into the two accounts in 1996 totaling $78,791.02.

During 1996, petitioners maintained a brokerage account with Bear, Sterns & Co., Inc. (brokerage account).  Petitioners recognized short- and long-term capital gains of $18,521 in 1996.

Federal Tax Returns

Grey acted as petitioners' accountant and filed both business and personal returns for petitioners beginning in or around 1983.  Petitioners filed a joint Federal income tax return for 1996 on July 18, 1997.  They reported adjusted gross income of $10,075.42, no taxable income, and self-employment tax of $1,067.77.  On their Schedule C, petitioners reported gross receipts of $20,680, other income of $80, and expenses of $13,202.96. Petitioners reported a net profit of $7,557.04 as business income on their return.  Grey prepared petitioners' personal return and the Form 1120 for NHIL.  Grey reviewed the return with petitioners, who then signed the return.

On July 8, 1998, petitioners filed a Form 1040X, Amended U.S. Individual Income Tax Return, for 1996.  The only change reported on this return was a claim by petitioners for the earned

income tax credit for 1996. As a result of filing the amended return, petitioners received a refund of tax in the amount of $3,030.

Procedural Matters

The examination of petitioners' income tax liability for 1996 arose out of an examination of NHIL's employment tax liability. During the examination, petitioners did not provide any information to respondent's revenue agent and failed to produce bank records or documentation in support of their position. Petitioners informed Grey, who represented petitioners during the audit, that the records were missing or were not in their possession.

The notice of deficiency was sent to petitioners on July 13, 2000, shortly prior to expiration of the period of limitations. Third-party records received pursuant to summonses for various bank accounts were received by the IRS subsequent to the notice of deficiency and disclosed additional bank deposit income. Respondent then amended his answer to allege an increased deficiency, addition to tax, and penalty.

On July 12, 2001, petitioners answered respondent's interrogatories and request for admissions. The interrogatories specifically asked petitioners to identify any nontaxable sources of the deposits made into the Nationwide account, the Cohen account, or the NHIL account. Petitioners responded that they

could not identify any document showing a nontaxable source because they were not in possession of their records. The interrogatories asked petitioners to:

> Provide the name, current address, current telephone number, and occupation of all persons who have any personal knowledge as to the non-taxable sources of deposits into petitioner husband's Union National Bank account * * * [Nationwide account] for the year 1996 and referred to above. Also provide a description of their anticipated testimony and indicate the persons' relationship to petitioners.

Respondent used similar language to inquire about the Cohen account and the NHIL account. Petitioners responded that they were "not aware of anyone at present having any knowledge of information mentioned in Respondent's interrogatory". Petitioners used similar language in response to interrogatories referring to the Cohen account and the NHIL account.

Respondent requested that petitioners produce documents relating to deposits made into each of their accounts. Specifically, respondent requested that petitioners "provide all work papers, deposit slips, bank statements, and any other documents showing the correct non-taxable transfers and the nature of those non-taxable items" for the Nationwide account, the Cohen account, the BMC account, and the NHIL account. On July 12, 2001, petitioners responded to the request for production of documents by stating "petitioners do not presently have any record mentioned herein."

OPINION

I.  Unreported Income From Bank Deposits

It is a taxpayer's responsibility to maintain adequate books and records sufficient to establish his or her income.  See sec. 6001; DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992).  When a taxpayer fails to maintain these records, respondent may determine income under the bank deposits method.  Id.  A bank deposit is prima facie evidence of income. Id. at 868; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).  The bank deposits method of reconstruction assumes that all money deposited into a taxpayer's account is taxable income, unless the taxpayer can show a nontaxable source for the income.  See DiLeo v. Commissioner, supra at 868.

A.  Income From BMC

Based on deposits made into the BMC account, respondent determined in the notice of deficiency that petitioners had unreported flowthrough income from the S corporation in the amount of $59,609.62.  Petitioners' sole argument on this issue is that BMC ceased to be in existence prior to 1996 because petitioner submitted an "Out of Existence/Withdrawal Affidavit" to the Commonwealth of Pennsylvania.

Petitioners bear the burden of showing that the deposits made into an account that they control represent nontaxable income.  The burden does not shift to respondent under section

7491, because petitioners failed to introduce credible evidence of the nontaxable nature of the deposits and petitioners failed to maintain adequate records to support their position.  By using the bank deposits method, respondent has made a prima facie case that petitioners have received income.  In any event, petitioners have stipulated to the amount of the deposits made into the BMC account and have offered no argument as to the nontaxable nature of the amounts.  Petitioners' argument that BMC was not in existence is irrelevant to this issue because petitioners remained in control of the BMC account during 1996.  We therefore conclude that the $59,609.62 represents additional unreported income to petitioners.

B.  Unreported Self-Employment Income and Flowthrough Income From NHIL

Respondent asserts that petitioners received $78,791.02 of self-employment income based on unexplained bank deposits made into the Nationwide account and the Cohen account.  Respondent also asserts that petitioners received flowthrough income from NHIL of $210,549.91 based on unexplained deposits of $186,079.54 made into the NHIL account, the Green Tree income of $24,180, and NHIL's taxable income of $290.37 erroneously reported on Form 1120.  Petitioners have admitted receipt of the Green Tree income and have not shown that the S corporation election made by them for 1996 was not effective.  We focus then on the treatment

of the unexplained deposits into all three of the accounts totaling $264,870.56.

The burden of proof with respect to the unreported income still in dispute is on respondent because he asserted the increased deficiencies in his amendment to answer.  Rule 142(a). Because petitioners failed to maintain adequate records of their business activities for 1996, the IRS secured petitioners' records to determine income under the bank deposits method. Based on the bank records for the Nationwide account, the Cohen account, and the NHIL account and on the stipulated facts concerning deposits into those accounts, respondent determined that petitioners had unreported income.  Respondent has met his burden, and petitioners must show that the deposits arose from nontaxable sources.

Petitioners dispute respondent's computation by combining all of the unreported income into a total of $289,341, including the deposits, the Green Tree income, and NHIL's income.  Of this amount, petitioners "admit to unreported income of $121,722.45" and dispute only $167,618.55.

Petitioners assert that $47,618.55 represents "gross proceeds from the sale of capital assets which were deposited into various accounts under the control of the Petitioners."

Petitioners raised this argument in their reply brief. Although petitioners' argument is somewhat unintelligible, they

appear to claim that this amount should be considered as additional nontaxable income because it was transferred from another account under petitioners' control.  However, petitioners stipulated prior to trial to the amount of the deposits that represented nontaxable amounts, and we are not persuaded that respondent did not already consider sales proceeds in determining nontaxable transfers, in part because the amounts stipulated as nontaxable exceeded the sales proceeds.  Petitioners failed to identify or prove specific deposits made into their bank accounts from their brokerage account that coincide in time or amount to the sales of capital assets.  Petitioners are raising a belated argument based on speculation that lacks credibility.

Petitioners dispute the remaining $120,000, claiming that this amount represented a loan from petitioner's deceased father.  Prior to trial, during examination of their return and in response to discovery requests, petitioners did not mention any loan from petitioner's father.  At trial, petitioner testified that he received a loan from his father in 1996 of $140,000 that was paid to him over time, in various increments, in both cash and wire transfers.  Petitioner stated that about $50,000 or $60,000 was lent to him in cash and was deposited in various bank accounts maintained by petitioners.  Petitioner stated that he repaid about $6,000 of the loan prior to his father's death.  Petitioners claim in their reply brief that $120,000 of the loan

was actually deposited into their accounts and that the remaining $20,000 was used to "pay expenses".

An alleged loan agreement between petitioner and his father was presented at trial but was not received into evidence because petitioners had failed to comply with the Court's standing pretrial order concerning exchange of documents. The late production of the document prejudiced respondent's ability to test its authenticity. In any event, there was no reliable evidence of funds actually transferred to petitioner from his father. Petitioners failed to file a trial memorandum required by the Court's standing pretrial order, but at the calendar call petitioners' counsel represented to the Court that petitioner's mother would be a witness. She was never called to testify, leaving petitioner's testimony uncorroborated. The uncorroborated testimony offered by petitioner lacks credibility and contradicts the stipulations, and we decline to accept petitioners' belated explanation as proof of nontaxable deposits. See, e.g., Tokarski v. Commissioner, 87 T.C. at 76-77.

Petitioner testified at trial that about $27,000 of NHIL's receipts were deposits from customer accounts that were later refunded or returned to the customers. Petitioners failed to provide any documentation of these refunds until the day before trial occurred and have not shown that they represented items included in their reported receipts. Petitioners also failed to

identify these refund amounts in response to discovery requests. We are not persuaded that these amounts should be offset against petitioners' unreported income from NHIL.

II. Employment Status

Respondent determined in the notice of deficiency that $20,760 reported on petitioners' Schedule C as income from NHIL should be recharacterized as wages and that the business deductions claimed by petitioners on Schedule C should be disallowed for lack of substantiation or claimed only as employee expenses on Schedule A, Itemized Deductions. Respondent argues that petitioner was an employee of NHIL because he was an officer who performed substantial services for NHIL.

Petitioner asserts that he was not an employee of NHIL. Petitioners rely on several arguments that have been rejected in analogous circumstances.

Under section 3121(d)(2), the term "employee" includes any individual who has the status of an employee under the common law. Paragraphs (1), (3), and (4) of section 3121(d) describe other individuals who are considered employees regardless of their status under the common law. Individuals described within those paragraphs are commonly referred to as "statutory" employees. See Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, 119 T.C. 121, 126 (2002).

One category of statutory employee is defined as "any officer of a corporation". Sec. 3121(d)(1). Regulations clarify the scope of section 3121(d) in determining the employee status of corporate officers as follows:

> Generally, an officer of a corporation is an employee of the corporation. However, an officer of a corporation who as such does not perform any services or performs only minor services and who neither receives nor is entitled to receive, directly or indirectly, any remuneration is considered not to be an employee of the corporation. * * * [Sec. 31.3121(d)-1(b), Employment Tax Regs.]

Consequently, if an officer performs substantial services for a corporation, and receives remuneration for those services, that officer is an employee. See Veterinary Surgical Consultants, P.C. v. Commissioner, 117 T.C. 141 (2001), affd. sub nom. Yeagle Drywall Co. v. Commissioner, 54 Fed. Appx. 100 (3d Cir. 2002). In this case, petitioner falls within the definition of an employee because he was an officer of NHIL who provided substantial services. Petitioner worked about 20 to 30 hours a week for NHIL throughout the year; he ran the company; he was the only individual who provided management services; and he received compensation for those services.

Petitioners argue that respondent has disregarded the employer and employee relationship under common law in determining petitioner's status. Petitioners focus on the argument that respondent disregards the "question of fact as to whether the corporation exercises any control over its officer."

They argue that "an employer cannot be his own employee" and that no other person controlled petitioner in his work for NHIL. To accept petitioners' contentions that there was a lack of control over petitioner would be the equivalent of disregarding the corporate form in which petitioner chose to conduct his business. Caselaw does not permit a taxpayer to use his or her dual role as a shareholder of and service provider to a corporation as grounds for ignoring the legal ramifications of the business form he selected. See Moline Props., Inc. v. Commissioner, 319 U.S. 436, 438-439 (1943); Joseph M. Grey Pub. Accountant, P.C. v. Commissioner, supra at 129.

Respondent properly recharacterized petitioner's income as wages and disallowed petitioners' Schedule C deductions. Petitioners claim that they are entitled to deductions not previously claimed for business expenses, mortgage interest, and real estate tax payments for 1996. Respondent has conceded petitioners' deductions for mortgage interest and real estate taxes.

Petitioners claim that checks were written from their accounts for various expenses that would have been deductible if they had itemized their deductions at the time of filing their return. Petitioners argue that respondent should have provided these checks to the Court. However, petitioners bear the burden of showing their entitlement to deductions. Rockwell v.

Commissioner, 512 F.2d 882 (9th Cir. 1975), affg. T.C. Memo. 1972-133.  Under section 6001, petitioners bear the sole responsibility for maintaining their business records.  They have neither identified nor proven any additional deductions to which they are entitled.  The categories duplicate those claimed on NHIL's return and appear questionable as employee expenses.  No deductions may be allowed on this record.

Addition to Tax and Penalty

Respondent determined an addition to tax for failure to file timely under section 6651(a)(1) and an accuracy-related penalty for substantial understatement under section 6662(a). Respondent has the burden of production under section 7491(c) for the addition to tax and the penalty and must come forward with sufficient evidence that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

Respondent determined the addition to tax for late filing because petitioners did not file until July 18, 1997.  Section 1.6081-4, Income Tax Regs., provides for an automatic 4-month extension if the taxpayer files an application for extension on Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, on or before the due date for filing the return if certain requirements are met.  There is no evidence that petitioners applied for an extension of time to

file their return.  Respondent has met his burden under section 7491(c) by establishing petitioners' late filing.

To avoid the addition to tax for filing a late return, petitioners have the burden of proving that the failure to file did not result from willful neglect and that the failure was due to reasonable cause.  See United States v. Boyle, 469 U.S. 241, 245 (1985).  To prove reasonable cause, a taxpayer must show that he or she exercised ordinary business care and prudence but nevertheless could not file the return when it was due.  See Crocker v. Commissioner, 92 T.C. 899, 913 (1989); sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioners argue against the imposition of the addition to tax by claiming that they were not in possession of the records and that they "suffered tragedies in the loss of close relatives."  Although petitioner testified that his father died in 1997 and that his mother-in-law and sister-in-law had both died, it is unclear from the record exactly when these events occurred.  In any event, petitioner continued to carry on a business throughout the tax year, making a considerable income from the business.  A taxpayer's selective inability to perform his or her tax obligations, while performing regular business, does not excuse failure to file.  See, e.g., Watts v. Commissioner, T.C. Memo. 1999-416; Wright v. Commissioner, T.C. Memo. 1998-224, affd. 173 F.3d 848 (2d Cir. 1999).  Petitioners'

failure to retain their files does not excuse them from their tax obligations because it is their responsibility to retain those records. Respondent's determination with respect to the addition to tax under section 6651(a)(1) is sustained.

Under section 6662(a), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax attributable to a substantial understatement of tax or due to negligence or disregard of rules or regulations. Sec. 6662(b). Whether the penalty is applied because of a substantial understatement of tax or negligence or disregard of the rules or regulations, the accuracy-related penalty is not imposed with respect to any portion of the understatements as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1); Higbee v. Commissioner, supra at 448-449. The decision as to whether the taxpayer acted with reasonable cause and good faith depends upon all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Relevant factors include the taxpayer's efforts to assess his proper tax liability, including the taxpayer's reasonable and good faith reliance on the advice of a tax professional. See id.

The term "understatement" is defined as the excess of the amount of tax required to be shown on the return for the taxable year over the amount of tax shown on the return for the taxable year. Sec. 6662(d)(2)(A). Based on petitioners' concessions of

unreported income of $121,722.45, without even considering our conclusion that they had additional substantial amounts of income, a prima facie case exists for imposition of the penalty.

The record in this case negates any mitigation by reasonable cause, and petitioners have not shown good faith or reasonable reliance on Grey. Their failure to maintain adequate books and records constitutes negligence, particularly when that failure resulted in substantial underreporting of income. See sec. 6662(c). The penalty determined by respondent is sustained.

To reflect the foregoing and the concessions of the parties,

<u>Decision will be entered</u>

<u>under Rule 155</u>.